# BRYAN *v.* HARR.

AFFIDAVITS OF DEFENSE; PROMISSORY NOTES; FRAUDULENT ALTERATIONS OF NEGOTIABLE INSTRUMENTS; INDORSER AND INDORSEE.

1. Where an affidavit of defense does not controvert or deny any of the material statements of the plaintiff's affidavit, filed with his declaration under the seventy-third rule of the lower court, such statements must be taken as substantially correct.

2. Statements made by a defendant in his affidavit of defense that he is not liable on his indorsement of the promissory note sued on,

and that there was no consideration for such indorsement, are mere conclusions of law, not to be accepted as facts simply because the defendant so states them.

3. A holder of a promissory note who derives his title through a holder in due course, and who is not himself a party to any fraud or illegality affecting the instrument, has all the rights of such former holder in respect of all parties prior to the latter; and every holder is deemed *prima facie* to be a holder in due course until the contrary is shown; *construing* sections 58, 59 and 124, act of Congress of January 12, 1899 ("Negotiable Instruments Law").

4. An affidavit of defense in an action on a promissory note against a prior indorser by an indorsee who had discounted the note at a bank and paid it after its dishonor, *held* insufficient, which stated that a prior note for a larger amount, which was the first of a series of renewal notes of which the one in suit was the last, had been fraudulently altered as to date and amount after indorsement by him, which alteration was not discovered by him until after the date of the note in suit, but which failed to state who was the holder of the note when the alterations were made, or that they were made by the plaintiff, or the bank, or any holder thereof, or what was the original tenor of the altered note, what date was changed, or from what smaller amount it was raised; and where it also appeared that the note in suit, and a prior one given in renewal thereof, had been given at the instance and request of the defendant.

No. 1208. Submitted December 10, 1902. Decided February 3, 1903.

HEARING on an appeal by the defendant from a judgment of the Supreme Court of the District of Columbia under the seventy-third rule of that court, for want of a sufficient affidavit of defense in an action against an indorser of a promissory note.          *Affirmed.*

The facts are sufficiently stated in the opinion.

*Messrs. Brandenburg & Brandenburg* and *Mr. Walter C. Clephane* for the appellant:

1. A material alteration of a note without the consent of the party to be charged avoids it in the hands of an innocent holder for value. *Wood* v. *Steele,* 6 Wall. (U. S.) 80; 30

Stat. at L. 797; *Ofenstein* v. *Bryan,* 30 West. Law Rep. 270; *Nat. Cap. Bank* v. *Bryan,* 30 West. Law Rep. 275. The alterations in the $2,500 note were material. *Wood* v. *Steele, supra; Ofenstein* v. *Bryan, supra; Nat. Cap. Bank* v. *Bryan, supra;* 30 Stat. at L. 797.

2. The consideration which belongs to the original paper belongs to a renewal also (1 Randolph Com. Paper, 460), the form and validity of the renewal note being in general that of the original (3 Id. 1583, 1584). The question as to the defenses applicable to a renewal note has been frequently considered by the courts, and the rule generally adopted is that a party may make the same defenses to an action on a note given in renewal as might have been made in the action on the original note. *Holden* v. *Cosgrove,* 12 Gray (Mass), 216; *Western Bank* v. *Mills,* 7 Cush. (Mass.) 546; *Mills* v. *Rice,* 6 Gray (Mass.), 464. The same requirements of proof apply in an action on a renewal as on the original note, both being regarded as given upon the same consideration (1 Daniel Neg. Instr. 177 [4th ed.]), it being held that if the consideration of the original bill is illegal, a renewal of it or the substitution of a new instrument for the old one does not cure the defect from the illegality of the consideration, but the renewal or substituted paper will be open to the same objection and defenses as could be interposed against the original. 1 Daniel Neg. Instr. 205 (4th ed.); Tiedeman Com. Paper, 180; *Sawyer* v. *Wiswell,* 9 Allen (Mass.), 39; *Holden* v. *Cosgrove,* 12 Gray (Mass.), 216; *Nat. Bank* v. *Lewis,* 75 N. Y. 524; *Chapman* v. *Black,* 2 B. & Ald. 588; *Preston* v. *Jackson,* 2 Stark. 237; *Southall* v. *Rigg,* 11 C. B. 481; *Flight* v. *Reed,* 32 L. J. Exch. 265; *Wynne* v. *Collander,* 1 Russ, 293; Byles on Bills, 257; *King* v. *Doane,* 139 U. S. 166, 172.

3. Both the $2,000 and the $1,900 notes were given in renewal of commercial paper at that time supposed by both appellee and appellant to be a binding obligation, but which, as a matter of fact, was void. It has been frequently decided that money paid under a mistake of fact can be recovered back. If, therefore, the note in suit had been paid by appellant, he might compel the return of the amount so paid.

Much more, then, may he defend an action brought for the purpose of compelling payment in the first instance. *Bell* v. *Gardner,* 4 M. & G. —; 11 L. J. 195; 43 E. C. L. 16; Byles on Bills and Notes, 257; *Baltimore, etc., RR. Co.* v. *Faunce,* 6 Gill, 68.

4. The general rule of law as laid down by Byles on Bills (Sec. 382) is that money paid under mistake as to facts may be recovered. On this principle, if a forged note be discounted, the transferee on discovery of the forgery may recover back the money paid, the imagined consideration totally failing. Tiedeman on Com. Paper, 400. It is now generally held that the negligence of the plaintiff will not preclude a recovery, because, even assuming that plaintiff was negligent, still the consideration has failed. 1 Beach Mod. Law of Cont., Sec. 661; *United States* v. *Nat. Park Bank of New York,* 6 Fed. Rep. 852. In this case, the question of negligence cannot arise because no facts are stated in the record even suggesting negligence. See also *Welch* v. *Goodwin,* 123 Mass. 77; *Fraker* v. *Cullum,* 21 Kan. 556; *Fraker* v. *Little,* 24 Kan. 598; *Baltimore & Ohio RR. Co.* v. *Fanuce,* 6 Gill, 68; *Tucker* v. *Ronk,* 43 Iowa, 80; *Talbot* v. *Nat. Bank of Commonwealth,* 129 Mass. 67; *Koontz* v. *Central Nat. Bank,* 51 Mo. 275; *Sullivan* v. *Collins,* 18 Iowa, 228; *Garland* v. *Salem Bank,* 9 Mass. 408; *Marriott* v. *Hampton,* 2 Smith Lead. Cas. 447 *et seq.* This question is not a new one in the District of Columbia. It has been decided in accordance with the principles outlined above in *Offutt* v. *Parrott,* 1 Cr. C. C. 154. See also *Strauss* v. *Hensey,* 9 App. D. C. 541.

5. It will be contended by the appellee, that although the note in suit as between himself and the appellant Bryan might be void, still, because it passed into the hands of an innocent holder for value, and was subsequently taken up by appellee, the appellee is entitled to stand in the shoes of such innocent holder, and recover for the full amount paid by the bank. The fallacy of this argument is found in the fact that the original note for $2,500 was void into whose hands soever it might come. It did come into the hands of the bank in

that condition. The note in suit was taken by the bank in renewal of a void obligation, and therefore as to the bank, there was no consideration for the note in suit; and the bank is not an innocent holder for value. But even if it were, it has been decided that the party who negotiates a note to an innocent holder for value, and who subsequently takes it up again, cannot stand in the shoes of the innocent holder, and take the paper free from defenses. It has also been held that this is the law since the passage of the recent negotiable instrument act which is in force in many of the States and in the District of Columbia. *Andrews* v. *Robertson,* and the very excellent note appended, in 54 L. R. A. 673.

*Mr. E. H. Thomas* for the appellee.

Mr. Chief Justive ALVEY delivered the opinion of the Court:

This is an appeal from the Supreme Court of the District of Columbia from a judgment rendered by that court under the seventy-third rule thereof. The action is brought upon a promissory note, by an indorsee against a prior indorser, and the declaration counts upon the indorsement of the note, by the defendant to the plaintiff; and also, by a second count, for money paid by the plaintiff for the defendant at his request; for money lent by the plaintiff to the defendant; for money had and received by the defendant for the use of the plaintiff; and for money found to be due from the defendant to the plaintiff on accounts stated between them.

Filed with this declaration is a bill of particulars of demand, the same being for the amount of the note of $1,900, and interest and cost of protest, paid by the plaintiff to the Montgomery County National Bank of Rockville, to take up said note for defendant as prior indorser; and for the proceeds of said note loaned to the defendant, as stated in the annexed affidavit of the plaintiff, which said affidavit is made part of the particulars of demand.

The affidavit to which reference is thus made states " that

prior to August 3, 1899, I was an indorser on a note for
$2,500, on which the defendant, Charles C. Bryan, was the
next prior indorser to me, and which had been discounted
at the Montgomery County National Bank, of Rockville,
Maryland, and which note matured on said day and was duly
protested and due demand made, and due notice of dishonor
given to the defendant; thereupon I was requested by the
defendant to procure the said $2,500 note to be renewed at
said bank, but I declined to do so unless it was reduced or
curtailed to the extent of $500 by the defendant; and the
defendant Bryan, in order to procure said renewal, and as
and for said curtail, gave me his note for $500, which $500
he has paid to me in full in various instalments.   I re-
ceived the said renewal note for $2,000, with genuine in-
dorsement of said defendant thereon, and at his request paid
the said overdue $2,500 note to said bank, and discounted
at said bank, at defendant's request, the said renewal note
for $2,000, which was dated August 3, 1899, and matured
on the 3d day of November, 1899, and was dishonored, and
due demand for payment was made, and due notice of the
dishonor thereof was given said defendant.   I further say
that the due receipt of said notice of dishonor and demand
for payment was never repudiated or denied by the defend-
ant.   I demanded of the defendant on the maturity of the
said note of $2,000 that it be paid, and then he said to me
that he was an accommodation indorser, but that he wanted
it renewed, and that another party to said note should pay
me $100 later for the purpose of curtailing the same, and he
would indorse a new note for $1,900, to be discounted like
the two previous notes, if I would take up said $2,000 note,
which I agreed to do, and so did, by giving said bank the
$1,900 note and paying the difference of $100 interest and
costs of protest to said bank, and the said bank took said note
in the usual course of business without notice of any defect
or equity in favor of the defendant or any other person party
thereto, and became the *bona fide* holder thereof for full
value.   The said note for $1,900 being the one mentioned
in the declaration hereto attached, which said declaration is

hereby made a part hereof, was accordingly made, as shown in said declaration, and indorsed to me by the defendant. The name of Henry O. Towles, the first indorser, was placed thereon, after the said note was signed by the maker, and after said Henry O. Towles had indorsed it the defendant, Charles C. Bryan, indorsed the same at his store, and it was then delivered to me and I discounted it as aforesaid for said defendant. I know the genuine signature of the defendant, and his signature to the said note is genuine; nor has he, though I have repeatedly asked payment of said note, ever denied or questioned his signature to the same. When the said $1,900 note matured due, demand was made at the bank where the same was payable and it was dishonored, and thereupon, on the day of the maturity thereof, duplicate notices of dishonor and demand for payment were sent to said indorser, Towles, and said defendant, Bryan, and myself received the same notice at my home, in Montgomery County, Maryland, and I mailed at once, upon the receipt thereof, postpaid to the address of each of them, the said indorsers, Towles and Bryan, in said city of Washington, separate notices of dishonor and demand for payment, none of which have been returned to me or repudiated or denied in any manner by said defendant or said Towles. I further say that I paid the said Montgomery County National Bank the full face of said note, interest, and costs of protest, and took up said note shortly after its maturity, and have ever since been and am now the actual *bona fide* holder and owner of said note, and that the sum of $1,902.42, with interest thereon from the 8th day of November, 1899, until paid, is justly due to me by the said defendant, exclusively of all set-offs," etc.

To the declaration, supported by the affidavit which has been set forth, the defendant pleaded three pleas. First. That he did not undertake or promise, in manner and form as alleged. Second. That he is not now and never was indebted to the plaintiff, as alleged; and Third. That the plaintiff was and is indebted to the defendant in the sum of $500, for money paid the plaintiff, in mistake of fact for the cur-

tailment of a note for $2,500, referred to in the affidavit of the plaintiff, filed with the declaration, and which sum the defendant pleads as set-off, and for which he prays judgment.

With these pleas the defendant filed an affidavit of defense under rule 73 of the court. By this rule 73 it is provided that upon the affidavit of the plaintiff filed with his declaration a judgment shall be entered, unless the defendant shall " file along with his plea, if in bar, an affidavit of defense denying the right of the plaintiff as to the whole or some specific part of his claim, and *specifically stating also in precise and distinct terms* the grounds of his defense, *which must be such as would, if true, be sufficient to defeat the plaintiff's claim in whole or in part."* It requires but slight examination of the terms of the affidavit filed by the defendant to perceive that it fails to comply with the requirement of the rule, and therefore the court below committed no error in rendering the judgment under the rule, without regard to the affidavit of defense.

The affidavit of defendant does not controvert or deny any of the material statements of fact contained in the affidavit of the plaintiff. Those statements of fact, therefore, must be taken as substantially correct. The defendant, however, denies all liability upon the note as the consequence of his indorsement thereon; and he states in avoidance of that liability, and of the facts set forth in the affidavit of the plaintiff, that, while he admits the fact of his indorsement as alleged, the same was placed upon the note in renewal of an original note purporting to be for the sum of $2,500, as alleged in the affidavit of merits filed by the plaintiff, but he is not liable thereon for the reason that when the name of said defendant was placed on the back of said note it was made payable upon its face for a much smaller amount; that after his name had been placed thereon said note was altered as to date, and raised in amount to the sum of $2,500, as aforesaid, without defendant's knowledge, consent, or authority, and he therefore denies the right of the plaintiff to recover the amount claimed, or any part thereof; that defendant supposing that

the demand of the plaintiff for payment of said $2,500 note, as referred to in his affidavit of merits, related to the payment of a genuine note upon which the defendant was liable, paid thereon the sum of $500, and indorsed a new note in renewal thereof for the sum of $2,000 without consideration, payaable three months after date; that when said $2,000 note became due and payable said G. B. Towles paid thereon the sum of $100, and the note for the sum of $1,900 here sued upon was given in renewal of the said $2,000 note; that upon said $1,900 note defendant became indorser without consideration; that the note of $1,900 so given is the note sued upon in this case; that it was not until long after the date of said $1,900 note, to wit, on or about December 11, 1899, that defendant became aware of the fraudulent alteration of said $2,500 note, or had suspicion thereof; that the plaintiff never returned to defendant said $2,500 note, nor said $2,000 note, but defendant is informed and believes that the same are still in his possession; that by reason of the change of the date and raising of amount of said original note as aforesaid the defendant says he is not liable in this suit; that defendant never received any portion of the consideration for any of the notes aforesaid, nor received any of the benefits thereof, either directly or indirectly;" and for the $500 paid on the first of said notes he claims the right to recover of the plaintiff.

The assertion made by the defendant in his affidavit of his nonliability on his indorsement of the note sued on, and that there was no consideration for the indorsement of the note, are mere conclusions of law, and are not to be accepted as established facts simply because the defendant so states them. As will be observed, the affidavit of the defendant fails to state who was the maker of the note for $2,500, nor does he state whether the indorsements thereon prior to that of the plaintiff were in blank or otherwise; and though he states that the alteration of the date and amount occurred after he placed his indorsement upon the note, he does not state who was the holder of the note when the alterations were made therein; nor does he state or intimate that such

alterations were made either by the plaintiff or by the Montgomery County National Bank, or any other person, while they were holders of the note. If the note was indorsed in blank it may have been in the hands of many holders before it came to the hands of the plaintiff; and it is not difficult to suppose that the alterations may have been made after the indorsement by the defendant but before the note was issued or put in circulation. It was indorsed by the plaintiff to the bank in order to have the note discounted, and the bank thereby became holder in due course for value. A holder who derives his title through a holder in due course, and who is not himself a party to any fraud or illegality affecting the instrument, has all the rights of such former holder in respect of all parties prior to the latter; and every holder is deemed *prima facie* to be a holder in due course, until the contrary is shown. Act of Congress relating to Negotiable Instruments, January 12, 1899, Secs. 58, 59. And, by Sec. 124 of that act, it is provided " That where a negotiable instrument is materially altered without the assent of all the parties liable thereon, it is avoided, except as against a party who has himself made, authorized, or assented to the alteration and subsequent indorsers. But where an instrument has been materially altered and is in the hands of a holder, in due course, and not a party to the alteration, he may enforce a payment thereof according to its original tenor."

These statutory provisions were in force during the time of the making and running of the notes in question. The defendant, however, has not stated in his affidavit what was the original tenor of the note alleged to have been altered, what date was changed, and from what smaller amount the note was raised to the sum of $2,500, the amount upon which the Montgomery County National Bank discounted the note. There is no question but that the bank received that note in due course and for value, and there can be no question of the right of the bank to demand and receive the money due upon that note at its maturity. And the plaintiff, by taking up the last renewal note, that for $1,900, has

paid the bank and become entitled to the note as holder thereof for value, and is entitled to stand in the place of the bank as against all parties bound thereon prior to the indorsement by the plaintiff himself to the bank — there being nothing shown to impeach or defeat his title to the note. The substituted notes, the first for $2,000 and the one sued on for $1,900, were given at the instance and request of the defendant, and they ought to preclude him from reverting back to the original note of $2,500 for the purpose of raising a defense.

In the case of *Montclair v. Ramsdell,* 107 U. S. 147, a very analogous question to that presented here was considered and decided by the Supreme Court of the United States. It was there held that the holder of a negotiable instrument is presumed to have acquired it in good faith and for value. But if, in a suit upon it, the defense be such as to require him to show that value was paid, it is not, in every case, essential to prove that *he* paid it; for his title will be sustained if any previous holder gave value. It was there contended by the defendant, that if it should be found by the jury that either fraud or illegality in the inception of the instrument was established, the verdict should be for the defendant, unless the plaintiff proved that he purchased for value or gave some consideration for it.

But the court said: " Such was not the law; for if any previous holder of the bonds in suit was a *bona fide* holder for value, the plaintiff, without showing that he had himself paid value, could avail himself of the position of such previous holder. In Byles on Bills, 119, 124, it is correctly said that ' if any intermediate holder between the defendant and the plaintiff gave value for the bill, that intervening consideration will sustain the plaintiff's title. In *Hunter* v. *Wilson,* 19 L. J. (N. S.) Exch. 8, the plea was that the bill of exchange was drawn by a named person at the request and for the accommodation of the defendant without any consideration or value whatever, and that it was indorsed by that person without any consideration or value given by the plaintiff for such indorsement either to the defendant or

to said person, or to any other person whatever. It was held that the plea ought to have contained a statement equivalent to an allegation that none of the previous parties to the bill had given value for the indorsement. One of the judges remarked, ' that some party to the bill may have given value for it, so as to vest a valid title in the plaintiff. We cannot tell through how many hands it may have passed.' " See also the case of *Mather* v. *Maidstone,* 87 Eng Com. Law Rep. 279.

In view of these well-established principles of commercial law, as applicable to negotiable instruments, the affidavit of the defendant wholly fails to state a defense which, if true, would defeat the right of the plaintiff to recover. The affidavit is not specific and certain enough to show a valid defense that would answer the declaration and defeat the entire right to recover thereon, if the case were put to trial on the pleadings; and, in such case, the plaintiff is entitled to judgment under the rule. We must therefore affirm the judgment.                     *Judgment affirmed.*