# United States Court of Appeals for the Federal Circuit

---

**SAS INSTITUTE, INC.,**
*Appellant*

v.

**COMPLEMENTSOFT, LLC.,**
*Cross-Appellant*

---

2015-1346, 2015-1347

---

Appeals from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. IPR2013-00226.

---

## ON PETITION FOR REHEARING EN BANC

---

JOHN MARLOTT, Jones Day, Chicago, IL, for appellant. Also represented by GREGORY A. CASTANIAS, Washington, DC; DAVID B. COCHRAN, Cleveland, OH; MATTHEW JOHNSON, Pittsburgh, PA.

MATTHEW TOPIC, Loevy & Loevy, Chicago, IL, for cross-appellant.

NATHAN K. KELLEY, Office of the Solicitor, United States Patent and Trademark Office, Alexandria, VA, for intervenor Michelle K. Lee. Also represented by SCOTT WEIDENFELLER, JOSEPH GERARD PICCOLO, STACY BETH MARGOLIES, SARAH E. CRAVEN.

————————————

Before PROST, *Chief Judge*, NEWMAN, LOURIE, DYK, MOORE, REYNA, WALLACH, TARANTO, CHEN, HUGHES, and STOLL, *Circuit Judges*.\*

NEWMAN, *Circuit Judge*, dissents from the denial of the petition for rehearing en banc.

PER CURIAM.

## **O R D E R**

Appellant SAS Institute, Inc. filed a petition for rehearing en banc. Responses to the petition were invited by the court and filed by intervenor Michelle K. Lee and cross-appellant Complementsoft, LLC. The petition was first referred as a petition for rehearing to the panel that heard the appeal, and thereafter the petition for rehearing en banc was referred to the circuit judges who are in regular active service. A poll was requested, taken, and failed.

Upon consideration thereof,

IT IS ORDERED THAT:

The petition for panel rehearing is denied.

The petition for rehearing en banc is denied.

The mandate of the court will issue on November 14, 2016.


FOR THE COURT

 November 7, 2016               /s/ Peter R. Marksteiner
        Date                    Peter R. Marksteiner
                                Clerk of Court


————————————

\*     Circuit Judge O'Malley did not participate.

# United States Court of Appeals
# for the Federal Circuit

_____

**SAS INSTITUTE, INC.,**
*Appellant*

**v.**

**COMPLEMENTSOFT, LLC.,**
*Cross-Appellant*

_____

2015-1346, 2015-1347

_____

Appeals from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. IPR2013-00226.

_____

NEWMAN, *Circuit Judge,* dissenting from denial of the petition for rehearing *en banc.*

Administrative agency practices are required to conform to the authorizing legislation and the statutory purpose. The Patent and Trademark Office ("PTO"), charged with administering the Leahy–Smith America Invents Act ("AIA"), P.L. 112–29, has adopted some implementing practices that are not authorized by the statute and not in accord with the legislative purpose of achieving final resolution of disputed patent validity issues by agency action in place of litigation.

This case concerns the PTO's adoption of the practice whereby on *inter partes* review ("IPR") the PTO may, in its sole discretion, choose to decide some, but not all, of

the patent claims that are challenged under the statute. This practice foils the legislative purpose of resolving certain patent issues in an administrative forum, newly available to litigants previously confined to the district court. From my colleagues' refusal to reconsider this agency practice *en banc*, I respectfully dissent.

### DISCUSSION

The America Invents Act established a new adjudicatory body called the Patent Trial and Appeal Board ("PTAB"), an administrative tribunal vested with authority to conduct trials including discovery, evidence, testimony, briefs, argument, and final decision. The PTAB's decisions produce estoppel in all subsequent proceedings between the parties, both administrative and judicial. The goal is the efficient and reliable resolution of certain patent disputes without the cost and delay and uncertainty of district court litigation. As explained by Senator Kyl, a principal architect of the legislation, this system "ideally [will] completely substitute for at least the patents-and-printed-publication portion of the civil litigation." 157 CONG. REC. S1376 (daily ed. Mar. 8, 2011) (statement of Sen. Kyl).

This goal was paramount during the years of genesis of the America Invents Act. "It is clearly appropriate to have an administrative process for challenging patent validity, but it should exist within a structure that guarantees a quick–and final–determination." *Patent Reform Act of 2009: Hearing on H.R. 1260, House Comm. on the Judiciary*, 111th Cong. 153 (April 30, 2009) (statement of Rep. Manzullo). The AIA provides for final determination of validity as to the grounds asserted against the claims challenged in the petition.

However, the PTO adopted regulations that authorizes the PTAB to choose to decide some, but not all, of the challenged claims. The practice, called "partial" or "selective" institution, leaves the unselected claims dangling,

lacking both finality and estoppel, preventing the expediency and economy and efficiency that motivated the America Invents Act. Senator Kyl stressed a primary purpose of the Act "to force a party to bring all of [its] claims in one forum . . . and therefore to eliminate the need to press any claims in other fora." 154 CONG. REC. S9989 (daily ed. Sept. 27, 2008) (statement of Sen. Kyl).

Instead, by "partial institution" the petitioner is not only mired in the proceeding for the claims that the PTAB has selected, but may also be obliged to litigate the other claims in other for a, even though those claims were properly presented to the PTAB for adjudication. The matter requires *en banc* correction, for this court has endorsed the PTO's position that "the final order of the Board need not address every claim raised in the petition for review" *Synopsys, Inc., v. Mentor Graphics Corp.*, 814 F.3d 1309, 1311 (Fed. Cir. 2016).

## THE STATUTE

The provisions of the AIA form a coherent whole only when all of the properly challenged claims are decided by the PTAB. "The cardinal rule of statutory interpretation [is] that no provision should be construed to be entirely redundant." *Kungys v. United States*, 485 U.S. 759, 778 (1988). "It is the duty of the court to give effect, if possible, to every clause and word of a statute" *Inhabitants of Montclair Tp. v. Ramsdell*, 107 U.S. 147, 152 (1883).

Relevant statutory provisions include—

### 35 U.S.C § 311 *Inter Partes* Review

Section 311 authorizes the defined post-grant challenges in the PTO. The purpose is not only to avoid or reduce the burdens and costs and delays of litigation, but potentially to avert litigation. *See* 157 CONG. REC. S1053 (Mar. 1, 2011) (statement of Sen. Whitehouse) ("[T]he bill will improve administrative processes so that disputes over patents can be resolved quickly and cheaply without

patents being tied up for years in expensive litigation."); *see also* H.R. Rep. No. 112-98 pt.1 at 48 (2011) ("[T]he purpose of the section is providing quick and cost effective alternatives to litigation."):

> **§ 311(a) *In general.*—** Subject to the provisions of this chapter, a person who is not the owner of a patent may file with the Office a petition to institute an *inter partes* review of the patent. . . .

> **(b) *Scope.*—** A petitioner in an *inter partes* review may request to cancel as unpatentable 1 or more claims of a patent only on a ground that could be raised under section 102 or 103 and only on the basis of prior art consisting of patents or printed publications.

The PTO's then-Director Dudas explained that the majority of validity challenges are on § 102 or §103 grounds based on reference patents and printed publications. *See Patent Reform: The Future of American Innovation: Hearing Before the Senate Comm. on the Judiciary,* 110th Cong. 7 (2007) (statement of Director Jon Dudas).

The legislative record is unambiguous: the purpose of the AIA procedure is to move these validity challenges into the PTO, whose expertise in technology and experience in the relevant law are intended to produce decisions entitled to estoppel in any judicial or administrative proceeding between these parties or their privies. Senator Grassley explained the intended effect: "If an *inter partes* review is instituted while litigation is pending, that review will completely substitute for at least the patents-and-printed-publications portion of the civil litigation." 157 Cong. Rec. S1376 (daily ed. Mar. 8, 2011) (statement of Sen. Grassley). This complete substitution, as enacted by Congress, cannot occur if the validity of only some of the challenged claims is decided, leaving the other challenged claims untouched.

### 35 U.S.C. § 312 Petitions

Section 312 states the required content of these post-grant petitions. When the specified content is not provided, the petition must be denied. When the specified content is provided, the petition may or may not be "instituted," in the PTO's unchallenged discretion. However, the statute does not contemplate the partial institution of only those parts selected by the PTO:

> **§ 312(a) *Requirements of petition.*** — A petition filed under section 311 may be considered only if—
>
> . . . .
>
> **(3)** the petition identified, in writing and with particularity, each claim challenged, the grounds on which the challenge to each claim is based, and the evidence that supports the grounds for the challenge to each claim, including— . . . .

At enactment Senator Grassley explained that "by requiring petitioners to tie their challenges to particular validity arguments against particular claims, the new threshold will prevent challenges from 'mushrooming' after the review is instituted into additional arguments employing other prior art or attacking other claims." 157 CONG. REC. S1376 (daily ed. Mar. 8, 2011). Emphasis on this requirement pervaded the genesis of the legislation. Senator Kyl explained that the petitioner "must present a full affirmative case" as to every challenged claim. 154 CONG. REC. S9987 (daily ed. Sept. 25, 2008) (statement by Sen. Kyl on S. 3600).

While § 314(d), discussed *infra*, provides that the PTO may refuse to accept any petition in its entirety, it was never contemplated that only some of the challenged claims might be reviewed, nor does § 314(d) provide such discretion, for this defeats the purpose of the proceeding.

The legislative record stresses the intent "to eliminate the need to press any claims in other fora." 154 CONG. REC. S9989 (daily ed. Sept. 27, 2008) (statement of Sen. Kyl).

### 35 U.S.C. § 313 Preliminary response to petition

The patent owner is authorized to respond, and to argue that "no *inter partes* review should be instituted." There is no suggestion of partial institution.

### 35 U.S.C. § 314 Institution of *inter partes* review

"What the bill does . . . is very simple. It says the Patent Office will make an administrative determination before the years of litigation as to whether this patent is a legitimate patent so as not to allow the kind of abuse we have seen." 157 CONG. REC. S5437 (daily ed. Sept. 8, 2011) (Statement of Sen. Schumer on Senate consideration of H.R. 1249). Section 314 provides for the threshold determination of whether to proceed at all and sets time limits for the decision of whether to institute review:

> **§ 314(a)  *Threshold.***—The Director may not authorize an *inter partes* review to be instituted unless the director determines that the information presented in the petition filed in section 311 and any response filed under section 313 shows that there is a reasonable likelihood that the petitioner would prevail with respect to at least 1 of the claims challenged in the petition.
>
> ***(b)  Timing.***—The Director shall determine whether to institute an *inter partes* review under this chapter pursuant to a petition filed under section 311 within 3 months after—
>
>> (1) receiving a preliminary response to the petition under section 313; or
>>
>> (2) if no such preliminary response is filed, the last date on which such response may be filed.

In legislative response to the PTO's concern about its ability to meet a sudden increase in workload, the statute provides that the PTO is not obligated to accept every petition, even when meritorious. Senator Kyl explained that this "reflects a legislative judgment that it is better that the Office turn away some petitions that otherwise satisfy the threshold for instituting and *inter partes* or post-grant review than it is to allow the Office to develop a backlog of instituted reviews that precludes the Office from timely completing proceedings." 157 CONG. REC. S1377 (daily ed. Mar. 8, 2011) (statement of Sen. Kyl). As part of this expedient, as well as to avert delay due to interlocutory appeal, the Act provides that the threshold decision whether to institute review is not appealable:

> **(d) No appeal.**— The determination by the Director whether to institute an *inter partes* review under this section shall be final and nonappealable.

Thus, when a petition for review is declined, litigation may proceed. The statutory plan is for an alternative to litigation, not duplicative litigation as may arise from partial institution.

### 35 U.S.C § 315 Relation to other proceedings or actions

A primary focus of the AIA is to avoid the cost and delay and uncertainty of patent litigation. Thus the statute places controls on the relation between these PTO proceedings and district court and ITC litigation. Of particular concern is the effect of partial institution on the integrity of the new estoppel provisions:

> **§ 315(e)** *Estoppel*—
>
> **(1)** *Proceedings before the Office.*—The petitioner in an *inter partes* review of a claim in a patent under this chapter that results in a final written decision under section 318(a), or the real

party in interest or privy of the petitioner, may not request or maintain a proceeding before the Office with respect to that claim on any ground that the petitioner raised or reasonably could have raised during that *inter partes* review.

**(2)** *Civil actions and other proceedings.*—The petitioner in an *inter partes* review of a claim in a patent under this chapter that results in a final written decision under section 318(a), or the real party in interest or privy of the petitioner, may not assert either in a civil action arising in whole or in part under section 1338 of title 28 or in a proceeding before the International Trade Commission under section 337 of the Tariff Act of 1930 that the claim is invalid on any ground that the petitioner raised or reasonably could have raised during that *inter partes* review.

A goal of these new PTO proceedings is finality of decision. As the legislation evolved, it was stressed that "if [such] proceedings are to be permitted, they should generally serve as a complete substitute for at least some phase of the litigation." S. REP. NO. 110-259, at 67 (2008) (Additional Views of Sen. Specter joined with Minority Views of Sens. Kyl, Grassley, Coburn and Brownback).

The estoppel provisions were controversial. *See, e.g.,* S. REP. NO. 111-18, at 17 (2009) ("Many businesses also have described could-have-raised estoppel as a powerful brake on their use of *inter partes* reexamination. They find this standard vague and uncertain, and fear that if they challenge a patent in an *inter partes* reexamination, they will lose the ability to raise later-discovered prior art against the patent if they are subsequently sued for infringement."). The statute as enacted embodies the dominant policy weight on the benefits of finality and estoppel, as explained by then-Director of the USPTO David Kappos: "Those estoppel provisions mean that your

patent is largely unchallengeable by the same party." *Hearing on H.R. 1249 before the Subcomm. on Intell. Prop., Competition and the Internet of the House Comm. on the Judiciary*, 112th Cong. (2011).

On enactment, Senator Grassley flagged the purpose and significance of the estoppel provisions:

> In addition, the bill would improve the current *inter partes* administrative process for challenging the validity of a patent. It would establish an adversarial *inter partes* review, with a higher threshold for initiating a proceeding and procedural safeguards to prevent a challenger from using the process to harass patent owners. It also would include a strengthened estoppel standard to prevent petitioners from raising in a subsequent challenge the same patent issues that were raised or reasonably could have been raised in a prior challenge. The bill would significantly reduce the ability to use post-grant procedures for abusive serial challenges to patents. These new procedures would also provide faster, less costly, alternatives to civil litigation.

157 CONG. REC. S952 (daily ed. Feb. 28, 2011) (statement of Sen. Grassley). These goals are thwarted by the partial institution practice.

Estoppel cannot arise as to claims that the PTO declined to review. Partial institution negates the purpose that any patent claim challenged by the petitioner and any new claim added during the proceeding could be fully and finally decided, thereby bringing "more certainty in litigation." 157 CONG. REC. S948 (daily ed. Feb. 28, 2011) (statement of Sen. Leahy).

### 35 U.S.C § 316 Conduct of inter partes review

Section 316 authorizes the PTO Director to issue regulations, sets some evidentiary standards, and provides

rules whereby the patent owner may file one motion to amend its claims. The rules here of concern are 37 C.F.R. 42.108(a) ("When instituting *inter partes* review, the Board may authorize the review to proceed on all or some of the challenged claims and on all or some of the grounds of unpatentability asserted for each claim."); 37 C.F.R. 42.108(b) ("At any time prior to institution of *inter partes* review, the Board may deny some or all grounds for unpatentability for some or all of the challenged claims. Denial of a ground is a Board decision not to institute *inter partes* review on that ground."). These practices work against the statutory purpose of final resolution of § 102 and § 103 issues.[1]

The Administrative Procedure Act requires that a reviewing court "shall hold unlawful and set aside agency action, findings, and conclusions found to be in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(C). "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-43 (1984).

## 35 U.S.C. § 318  Decision of the Board

---

[1]   The estoppel in IPR proceedings differs from the estoppel in the CBM transitional proceedings, 35 U.S.C. § 18(a)(1)(D) ("The petitioner in a transitional proceeding that … results in a final written decision… may not assert … that the claim is invalid on any ground that the petitioner raised during that transitional proceeding."). Both the "raised" and "could-have-raised" standards are affected by partial institution.

The legislation requires a final decision as to every claim challenged in the petition.

> **§ 318(a) *Final Written Decision*—** If an *inter partes* review is instituted and not dismissed under this chapter, the Patent Trial and Appeal Board shall issue a final written decision with respect to the patentability of any patent claim challenged by the petitioner and any new claim added under section 316(d).

The statute requires the Board's final decision to encompass "the patentability of any patent claim challenged by the petitioner and any new claim added under section 316(d)."

This requirement to render a final decision for each of the challenged claims directly comports with the estoppel provisions. Fidelity to this legislative purpose is a necessity if the AIA's new adjudicatory proceeding is to substitute for major aspects of patent validity litigation.[2] Such substitution will serve the Nation's interest in technological innovation and resultant societal benefits.

CONCLUSION

On this petition for rehearing *en banc*, the judicial obligation is to assure fidelity to the intent of Congress, as expressed in the statute and the legislative record, lest we

---

[2] I have focused on the question of partial institution, mindful that other aspects of AIA implementation are arising in other cases, all of which together affect the vitality of the statute. *See Davis v. Michigan Dept. of Treasury*, 489 U.S. 803, 809 (1989) ("A court must therefore interpret the statute 'as a symmetrical and coherent regulatory scheme,' and 'fit, if possible, all parts into an harmonious whole.'") (internal citations omitted).

become complicit in "frustrating the policy that Congress sought to implement:"

> [T]he courts are the final authorities on issues of statutory construction. They must reject administrative constructions of the statute, whether reached by adjudication or by rulemaking, that are inconsistent with the statutory mandate or that frustrate the policy that Congress sought to implement.

*Fed. Energy Comm'n v. Democratic Senatorial Campaign Comm.*, 454 U.S. 27, 32 (1981). Thus I must, respectfully, dissent from the denial of rehearing *en banc.*