SMYTHE v. INHABITANTS OF NEW PROVIDENCE TP., UNION
COUNTY, N. J.

INHABITANTS OF NEW PROVIDENCE TP., UNION COUNTY, N. J., v.
SMYTHE.

(Circuit Court of Appeals, Third Circuit.   March 9, 1920.)

Nos. 2498, 2499.

1. MUNICIPAL CORPORATIONS ⬅955(3)—PLAINTIFF, SUING ON BONDS, MUST
   PROVE APPOINTMENT OF COMMISSIONERS AND EXECUTION OF BONDS.
   In an action on township railroad aid bonds issued under Act N. J.
   April 9, 1868 (P. L. p. 915), by one claiming to be bona fide holder, plaintiff
   must prove the due appointment of commissioners and the execution by
   them of the bonds.

2. EVIDENCE ⬅372(4)—BONDS OVER 50 YEARS OLD ADMISSIBLE AS ANCIENT DOC-
   UMENTS.
   Bonds more than 50 years old are admissible as ancient documents,
   where they are on their face free from suspicion as to their authenticity,
   come from the proper source, and are accompanied by some corroborating
   evidence.

3. MUNICIPAL CORPORATIONS ⬅955(3)—PLAINTIFF, SUING ON BONDS, NEED
   NOT SHOW THAT COMMISSIONERS QUALIFIED BY GIVING BOND.
   In an action on township railroad aid bonds issued under Act N. J.
   April 9, 1868 (P. L. p. 915), plaintiff, claiming to be a bona fide holder,
   having proved the due appointment of commissioners and the execution
   by them of the bonds issued, need not prove that the commissioners ex-
   ecuted a bond to the township for the faithful discharge of their duties, as
   required by the statute.

4. EVIDENCE ⬅372(4)—RAILROAD AID BONDS ADMISSIBLE AS ANCIENT DOCU-
   MENTS.
   Township railroad aid bonds, executed about 50 years ago, were admis-
   sible in evidence as ancient documents, in connection with evidence of the
   preliminaries to their issue and their certification and registration.

5. EVIDENCE ⬅197—JURY AUTHORIZED TO COMPARE DISPUTED SIGNATURES
   WITH OTHERS.
   Under Act Feb. 26, 1913 (Comp. St. § 1471), relative to the comparison
   of handwriting, comparison by the jury of the signatures of commission-
   ers to the township railroad aid bonds sued on with their signatures to
   their oaths of office was authorized.

6. EVIDENCE ⬅576—TESTIMONY GIVEN AT FORMER TRIAL BY WITNESS SINCE
   DECEASED IS ADMISSIBLE.
   Notwithstanding Rev. St. § 861 (Comp. St. § 1468), providing that the
   mode of proof in common-law actions shall be by oral testimony and ex-
   amination of witnesses in open court, the testimony given by witnesses
   since deceased in another action between substantially the same parties
   and involving substantially the same issue may be proved, where such tes-
   timony was given under oath, with opportunity for cross-examination by
   the parties against whom it is offered in the subsequent action.

7. TOWNS ⬅52(6)—BONDS VALID THOUGH SIGNED BY ONLY TWO OF THREE
   COMMISSIONERS.
   Township railroad aid bonds issued under Act N. J. April 9, 1868 (P. L.
   p. 915), were valid, though signed by but two of the three commissioners
   appointed for that purpose.

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
263 F—31

8. **TOWNS** ☞52(6)—BONDS VALID THOUGH COMMISSIONERS DID NOT AFFIX THEIR SEALS.

Township railroad aid bonds issued under Act N. J. April 9, 1868 (P. L. p. 915), were valid, though the commissioners did not affix their seals as required by the statute, where the township had no seal.

9. **LIMITATION OF ACTIONS** ☞34(1)—STATUTE NOT APPLICABLE TO ACTION FOUNDED ON STATUTE.

A statute of limitation, framed, as the New Jersey act is, after the English Statute of 21 James I, does not apply to actions on a liability not created by the act of the parties, but by a positive provision of the statute.

10. **LIMITATION OF ACTIONS** ☞34(1)—ACTION ON TOWNSHIP BONDS ISSUED PURSUANT TO STATUTE IS SUBJECT TO STATUTE OF LIMITATION.

The New Jersey statute of limitations applies to township railroad aid bonds issued under Act N. J. April 9, 1868 (P. L. p. 915), as it is not the statute, but the act of the parties, which creates the liability.

11. **LIMITATION OF ACTIONS** ☞22(7)—STATUTE APPLICABLE TO SEALED INSTRUMENTS APPLIED TO TOWNSHIP BONDS, THOUGH SEALS WERE OMITTED.

Section 6 of the New Jersey statute of limitations, prescribing a limitation of 16 years for actions on any single or penal bill for the payment of money only, construed by the state courts as covering actions on sealed instruments for the payment of money, applied to township railroad aid bonds issued under Act N. J. April 9, 1868 (P. L. p. 915), which provided that they should be issued by the commissioner thereunder, under their hands and seals, though the seals were omitted.

12. **MUNICIPAL CORPORATIONS** ☞955(3)—PLAINTIFF, SUING ON BONDS, NEED NOT PROVE THE AMOUNT PAID.

Plaintiff, suing on township bonds, having proved that he paid for the bonds, need not prove the amount paid to establish his bona fides.

13. **MUNICIPAL CORPORATIONS** ☞955(3)—PLAINTIFF PRESUMED TO HAVE ACQUIRED BONDS IN GOOD FAITH, BUT PRESUMPTION REBUTTABLE.

A plaintiff, suing on township bonds, starts with a presumption that he acquired them in good faith, though he acquired them after maturity; but the presumption is rebuttable.

14. **MUNICIPAL CORPORATIONS** ☞941—PURCHASER OF BONDS SUCCEEDED TO TITLE OF PREDECESSOR.

A purchaser of township railroad aid bonds succeeds to whatever rights his predecessor in title had in them.

15. **TOWNS** ☞52(8)—BONDS BEAR INTEREST AFTER MATURITY AT SPECIFIED RATE WHERE THEY CONTAIN PROMISE TO PAY INTEREST UNTIL PRINCIPAL IS PAID.

Where township bonds provided for interest at a rate higher than the legal rate, but not usurious, until the principal sum should be paid, they bore interest after maturity at the stipulated rate.

16. **TOWNS** ☞52(8)—DEFAULTED INTEREST COUPONS ON TOWN BONDS BEAR INTEREST AT LEGAL RATE, THOUGH BONDS CONTAIN PROMISE TO PAY HIGHER RATE.

Though township bonds provided for the payment of interest at a rate higher than the legal rate until the principal sum should be paid, defaulted interest coupons bore interest after maturity at the legal rate only.

In Error to the District Court of the United States for the District of New Jersey; Thomas G. Haight and J. Warren Davis, Judges.

Action by Roland M. Smythe against the Inhabitants of the Township of New Providence in the County of Union and State of New Jersey. Judgment for plaintiff for an insufficient amount (253 Fed. 824), and both parties bring error. Reversed.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

McCarter & English, of Newark, N. J. (Conover English, of Newark, N. J., of counsel), for plaintiff in error.

Carroll Sprigg, of New York City, James R. Erwin, of Jersey City, N. J., and Albert Massey, of New York City, for defendant in error.

Before BUFFINGTON and WOOLLEY, Circuit Judges, and MORRIS, District Judge.

WOOLLEY, Circuit Judge. The facts which form the background of the matters here assigned as error are briefly these:

This suit was brought upon five bonds issued by the Township of New Providence pursuant to an Act of the Legislature of the State of New Jersey entitled "An Act to authorize certain towns in the Counties of Somerset, Morris, Essex and Union to issue bonds, and take stock in the Passaic and Peapack Railway Company," approved April 9, 1868 (P. L. of N. J. 1868, page 915). This act is quoted in part and discussed in Bernards Township v. Stebbins, 109 U. S. 341, 3 Sup. Ct. 252, 27 L. Ed. 956; Bernards Township v. Morrison, 133 U. S. 523, 10 Sup. Ct. 333, 33 L. Ed. 766; Montclair v. Ramsdell, 107 U. S. 147, 2 Sup. Ct. 391, 27 L. Ed. 431.

In declaring on the bonds, the plaintiff pleaded the statute, and, in conformity with its requirements, averred the consent of taxpayers of the Township to the issue of bonds, evidenced by affidavits of the Township commissioners, and affidavit of the Township assessor that the assenting taxpayers constituted a majority of the landed property holders; that the bonds were executed by two of the commissioners, but without seals; that they were afterwards registered in the office of the County Clerk and certified by him; that they were issued for public purposes; and were bought by the plaintiff in the public market for a valuable consideration. The defendant pleaded the general issue, statute of limitations, and certain special pleas challenging the validity of the bond issue on grounds which will appear more particularly in the consideration of the matters assigned as error.

Two of the five bonds were excluded from the evidence. The case was submitted to the jury on the remaining three bonds upon testimony for the plaintiff alone, the defendant having declined to introduce any testimony. The jury rendered a verdict for the plaintiff for the principal of the three bonds and interest; whereupon both parties sued out the writs of error now under consideration.

As the bonds sued on purport to be obligations of the Township issued solely by authority of the cited statute, their validity depends, of course, upon their issuance in conformity with its provisions. The many errors assigned are directed chiefly to the court's rulings on evidence tendered in proof of the validity of the bond issue. As these assignments are numerous, and do not always present, when viewed alone, the real questions they raise, we shall discuss them by their subject matter, with reference to which they are quite capable of classification.

[1] Assuming for the present that the plaintiff was a bona fide holder of the bonds, he was required, to entitle him prima facie to judgment,

to prove the due appointment of the commissioners and the execution by them of the bonds. Montclair v. Ramsdell, 107 U. S. 147, 158, 2 Sup. Ct. 391, 27 L. Ed. 431; Bernards Township v. Morrison, 133 U. S. 523, 527, 10 Sup. Ct. 333, 33 L. Ed. 766.

*The First Question*, therefore, is:

Was there competent proof of the due appointment of the commissioners?

[2] The plaintiff's evidence of the appointment of the commissioners consisted of the application by the requisite number of freeholders for the order appointing the commissioners, produced from the office of the County Clerk; the appointment of the commissioners; oaths of the commissioners; and the written consent of the taxpayers of the Township to their appointment; and the affidavit of the assessor that the taxpayers so consenting constituted a majority of the taxpayers in the Township. The Township contends that these papers were improperly admitted in evidence because the signatures of the subscribing witnesses were not proved. They were admitted on the theory that they were ancient documents, and also on proof of the signature of the County Clerk to some or all of these papers by receiving in this trial the testimony of witnesses, since deceased, given at a former trial.

The bonds were more than fifty years old. Instruments of the character of these form an exception to the general rule requiring documents to be authenticated by the testimony of subscribing witnesses, and are provable as ancient documents. In suits on bonds of such antiquity, the subscribing witnesses are presumed to be dead and the rule is strong that such instruments prove themselves. There is, however, an important qualification to the rule, which declares that, in order that ancient documents may prove themselves, they must on their face be free from suspicion, they must come from the proper custody, and be accompanied by some corroborating evidence. 10 R. C. L. 1097, 1098. This suspicion does not mean suspicion of their validity; it means suspicion as to their authenticity. The authenticity of the bonds being the sole question before the court on their tender as evidence, we are of opinion that the rule was fully met and that the bonds were properly admitted.

[3] It is contended further that the commissioners were required by the statute to execute a bond to the Township for the faithful discharge of their duties, that the execution of such a bond is a prerequisite to the valid appointment of the commissioners and to the validity of their subsequent acts, and that there was no evidence that the commissioners ever executed such a bond. We do not think evidence of the execution of a bond of this character is material to the plaintiff's right to recover on the bonds of the Township subsequently issued by the commissioners. A bond executed by them to insure the faithful performance of their duties was a matter between them and the Township. We are concerned here not with their bond but with their acts, the pertinent one being the issuance of the bonds in suit, which show, by endorsement, that the conditions essential to their validity have been complied with. Having proved the due appointment of

the commissioners and the execution by them, in fact, of the bonds, it is not necessary that the holder of the bonds

"should, in the first instance, prove either that he paid value, or that *the conditions preliminary to the exercise by the commissioners of the authority conferred by the statute* were, in fact, performed before the bonds were issued. The one was presumed from the possession of the bonds; and the other was established by the statute authorizing an issue of bonds, and by proof of the due appointment of the commissioners, and their execution of the bonds, with recitals of compliance with the statute." Montclair v. Ramsdell, 107 U. S. 147, 2 Sup. Ct. 391, 27 L. Ed. 431; Bernards Township v. Morrison, 133 U. S. 523, 527, 10 Sup. Ct. 333, 33 L. Ed. 766; Bernards Township v. Stebbins, 109 U. S. 341, 3 Sup. Ct. 252, 27 L. Ed. 956; New Providence v. Halsey, 117 U. S. 336, 6 Sup. Ct. 764. 29 L. Ed. 904; Cotton v. New Providence, 47 N. J. Law, 401, 2 Atl. 253; Mutual Life Co. v. Elizabeth, 42 N. J. Law, 235.

*Second Question.*

Was there competent proof of the execution in fact of the bonds so as to sustain their admission in evidence?

This question involves several others, the first of which is:

(1) Were the signatures to the bonds and their registration proved?

The registration of the bonds cannot be seriously questioned. As to the signatures of the commissioners, the bonds purported to be signed by two of the three commissioners in 1868. Both were dead at the time of trial. Their signatures were proven by the testimony of two witnesses given at a former trial and admitted by stenographer's notes at this trial, although, perhaps, it may be contended that this testimony related only to the signature of one commissioner.

[4] Aside from this testimony, the age of the bonds (having been executed about fifty years ago), the evidence of the preliminaries to their issue, their certification and registration, make them admissible in evidence as ancient documents. There is also evidence by one witness that the bonds had been registered by him and that he had certified the fact of their registration by endorsement on the bonds and recognized the signatures thereto.

[5] In addition to this evidence, the signatures of the two commissioners appeared in their oaths of office admitted in evidence. These exhibits, together with the bonds signed by the commissioners, were submitted to the jury and were before them for comparison. Such comparison is authorized by the Act of Congress, approved February 26, 1913, 37 St. at Large, 683, c. 79, U. S. Comp. St. 1916, § 1471, p. 2367, commented on in Maxey v. United States, 207 Fed. 327, 330, 125 C. C. A. 77, which extends the rule of the common law in regard to the comparison of handwritings, Withaup v. United States, 127 Fed. 530, 62 C. C. A. 328, and provides:

"In any proceeding before a court or judicial officer of the United States where the genuineness of the handwriting of any person may be involved, any admitted or proved handwriting of such person shall be competent evidence as a basis for comparison by witnesses, or by the jury, court, or officer conducting such proceeding, to prove or disprove such genuineness."

We regard the evidence offered as prima facie proof of the due execution of the bonds by the commissioners purporting to sign them.

[6] (2) If the commissioners' signatures were proved, was it by

competent evidence, the evidence offered and admitted being testimony given in the trial of another case by witnesses who were dead at the time of this trial?

While we think the execution of the bonds might have been proven by the bonds themselves as ancient documents, the signatures of the commissioners were further proven by admitting testimony given at a former trial brought to recover on the same bonds against the same defendant. This the defendant challenges under Section 861 of the Revised Statutes (Comp. St. § 1468). This section reads:

"The mode of proof in trial of actions at common law shall be by oral testimony and examination of witnesses in open court, except as hereinafter provided."

The exceptions to the section refer to the taking of depositions of living witnesses, a matter with which we are not concerned in this case. We do not find the cases cited on the taking of depositions under the exceptions to the cited section applicable to the precise question in this case. We, therefore, lay them aside.

There are two lines of cases in which this statute has been construed with reference to admitting in evidence in a later trial testimony given in a former trial. One rule prevails in the Eighth Circuit and is stated in Salt Lake City v. Smith, 104 Fed. 457, 43 C. C. A. 637, and in Chicago, M. & St. P. Ry. Co. v. Newsome, 174 Fed. 394, 98 C. C. A. 1. It is, briefly, as follows:

"These various sections of the Acts of Congress provide a complete system for the practice of the courts of the United States in the procurement and admission of the testimony of witnesses. In Section 861 they establish a general rule, and in the subsequent sections to which reference has been made they specify every exception to it. Every case must, therefore, fall under the rule or under one of the exceptions. A glance at the sections which specify the exceptions discloses the fact that the testimony of a witness at a former trial is not among the exceptions, and this case therefore necessarily falls under the express declaration of Congress that the mode of proof in actions at common law shall be by oral testimony, and examination of witnesses in open court."

The testimony of the absent witness was excluded.

The other rule prevails in the Sixth Circuit and is stated with elaborate consideration in Toledo Traction Co. v. Cameron, 137 Fed. 48, 69 C. C. A. 28. In that case the testimony of a witness given at a former trial was preserved by stenographic notes and admitted in evidence at the later trial. The Circuit Court of Appeals for the Sixth Circuit, in construing Section 861, Revised Statutes, held that, in enacting that section, Congress had no thought of altering the rules of evidence which maintained at common law or of excluding their application by making certain exceptions with reference to the taking of depositions. Quite contrary to the ruling of the Circuit Court of Appeals for the Eighth Circuit, the Circuit Court of Appeals for the Sixth Circuit construed Section 861 as not restricting the testimony literally to proof by oral testimony and examination of the witnesses in open court, but regarded that expression as a positive enactment of the rule of the common law, where evidence in one trial was admissible in another trial between the same parties, involving the same issues under certain circumstances.

As these interpretations of Section 861 involving opposite rules were made in cases where the absent witnesses in question were alive and where their testimony could have been obtained by resort to depositions, under other sections of the statute, we do not feel called upon to distinguish the two cases or to follow either rule, for the instant case and its applicable rule are distinguishable from those cited by the fact that here the witnesses who testified in the former trial are not merely absent; they are dead; and their testimony, if procurable at all, is to be had only from the mouths of witnesses who heard it at the former trial.

From the cases collated in Toledo Traction Co. v. Cameron, supra, as well as from all authorities which have been shown us and which we have found by our own research, it appears that testimony, given in a former civil action or at a former trial of the same action by a witness who has since died, is admissible in a later action if between substantially the same parties and substantially the same issue is involved, on the theory that such testimony is, both at common law and by long usage in the courts of this country, regarded as one of the exceptions to the general rule against hearsay testimony. The requirement of Section 861 of proof "by oral testimony and examination of the witnesses in open court" is satisfied by the presence at the later trial of a witness who heard (or stenographically reduced) the testimony of the witness since deceased; and if the witness since deceased gave his testimony at a former trial, under oath, and under cross examination or opportunity of cross examination by the party against whom it was offered at the later trial, the objection to the hearsay rule is overcome, and his testimony, if adequately preserved, is clearly admissible. Toledo Traction Co. v. Cameron, 137 Fed. 48, 69 C. C. A. 28; Mattox v. United States, 156 U. S. 237, 241, 242, 15 Sup. Ct. 337, 39 L. Ed. 409; 10 R. C. L. 966; 2 Jones on Evidence, §§ 336, 337.

Applying this rule to the offer in this case, we find no error committed by the trial court in admitting the testimony of deceased witnesses.

(3) Can the admission in evidence of the bonds be sustained on the ground that they were ancient documents?

We are of opinion that the bonds proved themselves as ancient documents.

[7] (4) Were the bonds, having been signed by only two of the three commissioners, valid?

It is a fair construction of the statute that the bonds though signed by but two of the three commissioners are valid. Any doubt upon this question, however, is set at rest by the case of Cotton v. New Providence, 47 N. J. Law, 401, 2 Atl. 253, where this provision of the statute was construed.

[8] (5) Were the bonds invalid because the commissioners did not affix their seals?

This question was argued on demurrer before Thomas G. Haight, then district judge. The statute provides that the bonds should be issued by the commissioners under their "hands and seals, respectively." Under authority of Draper v. Springport, 104 U. S. 501, 26 L. Ed. 812,

Judge Haight held that the substantial thing to be done by the commissioners on behalf of the Township was to pledge the security of the Township in aid of the Railroad Company by issuing its bonds. "The technical form of the obligations was a matter of form rather than of substance. The issue of bonds under seal, as contradistinguished from bonds and obligations without a seal, was merely a directory requirement. The Town, indeed, had no seal; and the individual seals of the commissioners would have had no legal efficacy, for the bonds were not their obligations, but the obligations of the Town; and their seals could have added nothing to the solemnity of the instruments." We are in full accord with this ruling. Morrison v. Bernards Township, 36 N. J. Law, 219; Bernards Township v. Morrison—Bernards Township v. Stebbins, 109 U. S. 341, 349, 350, 3 Sup. Ct. 252, 27 L. Ed. 956.

*Third Question.*

Was suit on the bonds barred by the Statute of Limitations?

This involves two questions. The first is:

(1) Was the action founded on the bonds or on the statute?

[9, 10] The rule is settled that where a liability is created, not by the act of the parties but by positive provision of a statute, a Statute of Limitations, framed, as the New Jersey Act, after the Statute of 21 James I, is not applicable. Angell on Limitations, § 80. This rule is not questioned, but the Township denies its applicability to this case. The distinction between liability on the statute and liability on bonds issued under authority of a statute is clearly shown in Robertson v. Blaine County, 90 Fed. 63, 32 C. C. A. 512, 47 L. R. A. 459, and in Bullard v. Bell, Fed. Cas. No. 2,121; Cowenhover v. Freeholders, 44 N. J. Law, 232; Outwater v. Passaic, 51 N. J. Law, 345, 18 Atl. 164. These are actions on liabilities fixed by statutes where the parties did nothing to create them. In Morrison v. Township of Bernards, 36 N. J. Law, 219, it was held, that a suit may be maintained on bonds issued pursuant to the statute under consideration, thus recognizing that it was the act of the parties which created the liability, not the statute, and that an action to enforce that liability is on the bonds, not on the statute. This view is, inferentially at least, supported by Bernards Township v. Morrison, 133 U. S. 523, 527, 10 Sup. Ct. 333, 33 L. Ed. 766.

[11] (2) Did the six year or the sixteen year Statute of Limitations (Comp. St. 1910 N. J. p. 3162) apply?

Section 1 of the act limits actions to six years on contracts "without specialty"; Section 6, to sixteen years on actions, among others, "upon any single or penal bill for the payment of money only." It is to be noted that the last mentioned section (the sixteen year limitation) does not in so many words refer to instruments under seal, yet the courts of New Jersey have given to the terms so used their recognized legal significance and have construed that clause to cover actions "upon sealed instruments for the payment of money only." Elasser v. Haines, 52 N. J. Law, 10, 21, 18 Atl. 1095. Therefore, bonds under seal are within the sixth section.

What are the instruments sued on in this case? Admittedly they are bonds. The statute which authorized their issuance so described them. The statute, however, went further and gave them the dignity of bonds under seal by directing that they bear the seals of the Township commissioners. When issued, the bonds themselves recited their execution under the seals of these officials. As the failure of the commissioners to affix their seals to the bonds as directed by the statute did not destroy their validity (Draper v. Springport, supra), the omission of the commissioners' seals did not, we think, change the character of the instruments from that which the statute authorized and defined. Being in legal effect "sealed instruments for the payment of money only" (Draper v. Springport, supra; Elassar v. Haines, supra), the bonds in suit come under Section 6 of the New Jersey Statute of Limitations and are subject to the sixteen year limitation, not to the six year limitation.

Bonds No. 66 and 87, having matured more than sixteen years before suit was brought, and the Statute of Limitations of New Jersey having run against them, were properly barred by the trial court. Bonds No. 92, 93 and 94, having matured at a date less than sixteen years before this suit was begun, were properly admitted.

*Fourth Question.*

Was the plaintiff a bona fide holder of the bonds and did the court err in charging the jury on this issue?

[12-14] The plaintiff proved that he paid for the bonds. He did not prove the amount he paid. This was not necessary. On the subject of fides, the plaintiff starts with the presumption that he acquired the bonds in good faith, even though he acquired them after maturity. Montclair v. Ramsdell, 107 U. S. 147, 158, 2 Sup. Ct. 391, 27 L. Ed. 431; Bernards Township v. Morrison, 133 U. S. 523, 527, 10 Sup. Ct. 333, 33 L. Ed. 766. Being a presumption, it was rebuttable. It was not rebutted by any evidence offered by the Township. The plaintiff in buying the bonds succeeded to whatever rights his predecessor in title had in them. Montclair v. Ramsdell, supra; Byles on Bills, 119, 124. There is nothing shown that he purchased them with knowledge of any infirmity. The fides of the plaintiff's holding was a matter of defence of which the defendant did not choose to avail itself.

If this case had been brought here on the defendant's writ alone, or on the plaintiff's writ also, but with no more assignments of error than those we have reviewed, we would have entered a decree affirming the judgment below. But, while we find the judgment free from error on the defendant's showing, we are confronted by the plaintiff's writ under which he also attacks the judgment. His attack against the judgment is made, not solely on the ground of the court's alleged error in applying the Statute of Limitations to two of the bonds (which we have resolved against him), but also on an alleged error of the court in charging the jury, that, in framing their verdict, if for the plaintiff, they should compute interest on the principal of three remaining bonds at a rate less than that which the bonds called for. This raises another question, which we term the

*Fifth Question.*

Was the plaintiff entitled to interest on the principal of the bonds at their prescribed rate of seven per centum per annum from the dates of maturity to the date of verdict?

[15] The trial court instructed the jury that if they found for the plaintiff they "should allow him interest at the rate of seven per cent. from the date of the execution of the bonds until their maturity, * * * but [they should] allow interest on the bonds from the date of their maturity until the present date at the rate of six per cent. only, six per cent. being the legal rate of interest in this state."

We think this was error. Our opinion is based, first, on a fact and then on the law as applied to that fact, about neither of which can there be much dispute. The bonds provided for the payment of their principal at a named bank, "also interest thereon at the rate of seven per cent. per annum, payable semi-annually on the first days of July and January in each year, *until the said principal sum shall be paid,* on the presentation of the annexed interest coupons at the said bank." This obligation, while it indicates the expectation of the obligor to pay principal at maturity, contains an express promise to pay interest at seven per cent. "until the said principal sum shall be paid." The principal sum was not paid either at maturity or later. This is the fact.

Cases in the Supreme Court of the United States, and, similarly, a case in the Court of Errors and Appeals of New Jersey, declare the law, as to interest, to be, that in the absence of provision in a bond indicating the continuance of the prescribed interest rate after maturity, the legal rate prevails; but where a bond calls for a given rate, which is higher than the legal rate, yet is not usurious, and provides for the payment of that rate until the principal of the bond is paid, the contract rate prevails after maturity quite as well as before maturity. Jones Co. v. Guttenberg, 66 N. J. Law, 659, 667, 51 Atl. 274; New Orleans v. Warner, 175 U. S. 120, 147, 20 Sup. Ct. 44, 44 L. Ed. 96; Holden v. Trust Co., 100 U. S. 72, 25 L. Ed. 567; 2 Daniel on Negotiable Instruments, 6th Ed. Section 1458A.

[16] These authorities (which apparently were not submitted to the trial judge) rule the question. But in this ruling, the rate of interest on the principal of the bonds should not be confused with the rate of interest on defaulted coupons. The interest rate on coupons after maturity is the legal rate because the coupons carry no contract rate of interest after maturity.

We are constrained to hold that in instructing the jury, if they found for the plaintiff, to compute interest on the bonds after maturity at the legal rate, the trial court erred, and that, because of this error, the judgment below must be

Reversed.