State of CALIFORNIA, Plaintiff,

v.

UNITED STATES, Defendant.

No. 99–18C.

United States Court of Federal Claims.

Sept. 26, 2000.

Gordon B. Burns, Deputy Attorney General, with whom were James Wernicke, Deputy Attorney General, Darryl L. Doke, Supervising Deputy Attorney General, and Bill Lockyer, Attorney General, State of California, Sacramento, California, attorneys of record for the plaintiff.

Lisa B. Donis, Commercial Litigation Branch, Anthony H. Anikeeff, Assistant Director, David M. Cohen, Director, Commercial Litigation Branch, Civil Division, and David W. Ogden, Assistant Attorney General, United States Department of Justice, attorneys of record for the defendant.

## OPINION

HORN, Judge.

### FINDINGS OF FACT

In the mid–1950s, the United States Department of the Interior and the State of

California both evaluated the expansion of their respective water projects in the Central Valley of California and began to discuss a joint project. The separate plans of both government entities proposed the same reservoir. The parties began discussions of a joint venture.

In response to these discussions Congress passed legislation that authorized the Secretary of Interior to begin formal negotiations with the State of California for the construction of a joint-use facility. *See* Central Valley Project—California, Act of June 3, 1960, Pub.L. No. 86–488, 74 Stat. 156 (1960) (hereafter, San Luis Act). The law provided that any agreement reached between the two parties would be subject to congressional review. San Luis Act § 2. The parties reached an agreement in late 1961 (the Contract), which, following hearings, Congress chose not to reject, allowing the project to proceed as it was negotiated. 87 Cong. Rec. 12435 (July 2, 1962) (statement of Sen. Miller). The United States proceeded to construct the San Luis Unit, a 102–mile canal that transports water from Northern California through the Central Valley to Southern California. The Canal was designed and constructed by the Bureau of Reclamation (the Bureau). Construction was completed in 1967 and was then turned over to the State of California for operation. The Canal crosses the path of several transitory streams. In years of heavy rainfall, the Canal blocks the path of the streams and diverts the water onto neighboring landowners' properties.

As provided for in Section 3(d) of the San Luis Act, the Contract has a provision that requires the United States and California to equitably share the annual costs of operations, maintenance, and replacement costs of joint use facilities. While the Act did not mention claims made by third parties against either the United States or California, the 1961 Contract and 1972 supplemental agreement thereto (the Supplement) did include provisions for such claims. Section 21 of the 1961 Contract states: "The United States and the State shall each pay annually an equitable share of the operation, maintenance, and replacement costs of the joint-use facilities, including claims paid by either party." The Supplement provided that the state shall notify the United States of each accident or incident as a result of the operation of the joint or federal-only facilities. In the Supplement, the proportion of payments was set at 55 percent to be paid by the State of California and 45 percent to be paid by the United States. From 1969 until 1993, the United States and California reimbursed each other for their respective portion of flood claims paid in relation to the San Luis Canal without incident.

This suit arises from damages caused by a large storm in March 1995 that caused a flood and significant damage. Several affected landowners submitted claims for flood damages to both the State of California and the United States. In March 1996, the Bureau billed California for its 55 percent share of the flood claims settled by the Bureau in June 1995. Between 1997 and 1999, California paid several other flood claims related to the March 1995 floods. When California requested reimbursement, however, the Bureau informed California that the Bureau's understanding was that the federal government was immune from liability for any flood related claims under the Flood Control Act of 1928, ch. 569, 45 Stat. 535 (codified at 33 U.S.C. § 702c (1994)), and that, therefore, the Bureau would no longer be refunding any portion of flood damage claims.

The Flood Control Act, which was enacted initially for the construction and maintenance of a flood control project along the Mississippi River and its tributaries in 1928, contains a broadly-worded provision limiting the liability of the United States for damage from floods or flood waters. The applicable provision states: "No liability of any kind shall attach to or rest upon the United States for any damage from or by floods or flood waters at any place...." 33 U.S.C. § 702c (1994).

As of November of 1999, California claims it has paid $5,335,600.00 in flood claims in which the Bureau has refused to share the cost. In addition, the State alleges it has incurred significant costs, amounting to $900,000.00, related to claims from the March 1995 floods. According to the plaintiff, the State continues to incur costs related to the 1995 claims as well as for claims filed subse-

quently. California has filed suit in this court for 45 percent of the total of the value of the claims and the costs involved, for a total of approximately $2,806,000.00. Both parties have filed cross-motions for summary judgment and have stipulated that the sole issue presented for judgment is "whether the immunity provided under the Flood Control Act, 33 U.S.C. § 702c, extends to the 1961 Contract and the Supplement and thus provides the United States with immunity from liability under the Contract for a share of the cost of flood claims paid by the state."

## DISCUSSION

Summary judgment in this court should be granted only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. RCFC 56 is patterned on Rule 56 of the Federal Rules of Civil Procedure and is similar both in language and effect. Both rules provide that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

RCFC 56(c) provides that in order for a motion for summary judgment to be granted, the moving party must demonstrate that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Avenal v. United States,* 100 F.3d 933, 936 (Fed.Cir. 1996), *reh'g denied* (1997); *Creppel v. United States,* 41 F.3d 627, 630–31 (Fed.Cir.1994); *Meyers v. Asics Corp.,* 974 F.2d 1304, 1306 (Fed.Cir.1992); *Lima Surgical Assocs., Inc. Voluntary Employees' Beneficiary Ass'n Plan Trust v. United States,* 20 Cl.Ct. 674, 679 (1990), *aff'd,* 944 F.2d 885 (Fed.Cir.1991). A fact is material if it will make a difference in the result of a case. *Curtis v. United States,* 144 Ct.Cl. 194, 199, 168 F.Supp. 213, 216 (1958), *cert. denied,* 361 U.S. 843, 80 S.Ct. 94, 4 L.Ed.2d 81 (1959), *reh'g denied,*

361 U.S. 941, 80 S.Ct. 375, 4 L.Ed.2d 361 (1960). Summary judgment "saves the expense and time of a full trial when it is unnecessary. When the material facts are adequately developed in the motion papers, a full trial is useless. 'Useless' in this context means that more evidence than is already available in connection with the motion for summary judgment could not reasonably be expected to change the result." *Dehne v. United States,* 23 Cl.Ct. 606, 614–15 (1991) (citing *Pure Gold, Inc. v. Syntex (U.S.A.), Inc.,* 739 F.2d 624, 626 (Fed.Cir.1984)), *vacated on other grounds,* 970 F.2d 890 (Fed.Cir. 1992); *United States Steel Corp. v. Vasco Metals Corp.,* 55 C.C.P.A. 1141, 394 F.2d 1009, 1011 (1968). Disputes over facts which are not outcome determinative under the governing law will not preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 247–48, 106 S.Ct. 2505; *Lane Bryant, Inc. v. United States,* 35 F.3d 1570 (Fed.Cir.1994). Summary judgment, however, will not be granted if "the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 248, 106 S.Ct. 2505; *see also Uniq Computer Corp. v. United States,* 20 Cl.Ct. 222, 228–29, 1990 WL 50928 (1990).

When reaching a summary judgment determination, the judge's function is not to weigh the evidence and determine the truth of the case presented, but to determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 249, 106 S.Ct. 2505; *see, e.g., Ford Motor Co. v. United States,* 157 F.3d 849, 854 (Fed.Cir. 1998) (the nature of a summary judgment proceeding is such that the trial judge does not make findings of fact); *Cloutier v. United States,* 19 Cl.Ct. 326, 328 (1990), *aff'd,* 937 F.2d 622, 1991 WL 93077 (Fed.Cir.1991) (table). The judge must determine whether the evidence presents a disagreement sufficient to require submission to fact finding, or whether the issues presented are so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 250–52, 106 S.Ct. 2505. When the record could not lead a rational trier of fact

to find for the nonmoving party, there is no genuine issue for trial, and the motion must be granted. *See, e.g., Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). In such a case, there is no need for the parties to undertake the time and expense of a trial, and the moving party should prevail without further proceedings.

If, however, the nonmoving party produces sufficient evidence to raise a question as to the outcome of the case, then the motion for summary judgment should be denied. Any doubt over factual issues must be resolved in favor of the party opposing summary judgment, to whom the benefit of all presumptions and inferences runs. *Id.* at 587–88, 106 S.Ct. 1348; *Wanlass v. Fedders Corp.,* 145 F.3d 1461, 1463 (Fed.Cir.1998), *reh'g denied* (1998); *Litton Indus. Prods., Inc. v. Solid State Sys. Corp.,* 755 F.2d 158, 163 (Fed.Cir. 1985); *H.F. Allen Orchards v. United States,* 749 F.2d 1571, 1574 (Fed.Cir.1984), *cert. denied,* 474 U.S. 818, 106 S.Ct. 64, 88 L.Ed.2d 52 (1985).

The initial burden on the party moving for summary judgment to produce evidence showing the absence of a genuine issue of material fact may be discharged if the moving party can demonstrate that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also Conroy v. Reebok Int'l, Ltd.,* 14 F.3d 1570, 1575 (Fed.Cir.1994), *reh'g denied* (1995); *Lima Surgical Assocs., Inc. Voluntary Employees' Beneficiary Ass'n Plan Trust v. United States,* 20 Cl.Ct. at 679. If the moving party makes such a showing, the burden then shifts to the nonmoving party to demonstrate that a genuine factual dispute exists by presenting evidence which establishes the existence of an element essential to its case upon which it bears the burden of proof. *See Celotex Corp. v. Catrett,* 477 U.S. at 322, 106 S.Ct. 2548; *Lima Surgical Assocs., Inc. Voluntary Employees' Beneficiary Ass'n Plan Trust v. United States,* 20 Cl.Ct. at 679.

Pursuant to RCFC 56, a motion for summary judgment may succeed whether or not accompanied by affidavits and/or other documentary evidence in addition to the pleadings already on file. *Celotex Corp. v. Catrett,* 477 U.S. at 324, 106 S.Ct. 2548. Generally, however, in order to prevail by demonstrating that a genuine issue for trial exists, the nonmoving party will need to go beyond the pleadings by use of evidence such as affidavits, depositions, answers to interrogatories and admissions. *Id.*

Even if both parties argue in favor of summary judgment and allege an absence of genuine issues of material fact, however, the court is not relieved of its responsibility to determine the appropriateness of summary disposition in the particular case. *Prineville Sawmill Co., Inc. v. United States,* 859 F.2d 905, 911 (Fed.Cir.1988) (citing *Mingus Constructors, Inc. v. United States,* 812 F.2d 1387, 1391 (Fed.Cir.1987)). "[S]imply because both parties moved for summary judgment, it does not follow that summary judgment should be granted one or the other." *LewRon Television, Inc. v. D.H. Overmyer Leasing Co.,* 401 F.2d 689, 692 (4th Cir.1968), *cert. denied,* 393 U.S. 1083, 89 S.Ct. 866, 21 L.Ed.2d 776 (1969); *see also Levine v. Fairleigh Dickinson Univ.,* 646 F.2d 825, 833 (3d Cir.1981); *Home Ins. Co. v. Aetna Casualty & Sur. Co.,* 528 F.2d 1388, 1390 (2d Cir.1976). Cross-motions are no more than a claim by each party that it alone is entitled to summary judgment. The making of such inherently contradictory claims, however, does not establish that if one is rejected the other is necessarily justified. *Rains v. Cascade Indus., Inc.,* 402 F.2d 241, 245 (3d Cir.1968); *Bataco Indus., Inc. v. United States,* 29 Fed. Cl. 318, 322 (1993), *aff'd,* 31 F.3d 1176, 1994 WL 329612 (Fed.Cir.1994) (table). The court must evaluate each party's motion on its own merit, taking care to draw all reasonable inferences against the party whose motion is under consideration. *Mingus Constructors, Inc. v. United States,* 812 F.2d at 1391.

Neither party has argued that there are material facts in dispute in the case. After an examination of the record and the parties' pleadings, the court agrees. Therefore, this case is ripe for summary judgment.

The Tucker Act waives sovereign immunity for cases arising under contracts with the United States, and vests jurisdiction in this

court for such actions. *See* 28 U.S.C. § 1491(a)(1) (1994); *United States v. Testan,* 424 U.S. 392, 400, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976), *reh'g denied,* 425 U.S. 957, 96 S.Ct. 1736, 48 L.Ed.2d 202 (1976). The defendant contends that the Flood Control Act places a general restriction on the government's liability for flood damages. The plaintiff, however, alleges that the Flood Control Act is only intended to protect the federal government from liability for tort claims relating to floods or flood waters. Thus, the plaintiff argues since the present case is a breach of contract claim, and not a tort claim, the Flood Control Act does not apply to this case. Plaintiff's position is that in order to partially repeal the Tucker Act for flood claims arising under contracts, Congress would have had to include a specific statement to that effect in the legislation. In the absence of such an explicit repeal of sovereign immunity, the plaintiff argues, the defendant must show at least an implied repeal on the part of Congress, or else the State of California's claims based on contract are properly lodged in this court.

▮▮ In order to determine the interaction of the Flood Control Act and the San Luis Act, the rules of statutory interpretation must be applied to both statutes. The United States Court of Appeals for the Federal Circuit has offered guidance on how to approach statutory interpretation, as follows:

Statutory construction requires the application of recognized rules. *See generally* Sutherland Statutory Construction (5th ed.). First, " ' "[t]he starting point in every case involving construction of a statute is the language itself." ' " *Greyhound Corp. v. Mt. Hood Stages, Inc.,* 437 U.S. 322, 330, 98 S.Ct. 2370, 2375, 57 L.Ed.2d 239 (1978). Second, where a statute states what a term "means" then all other meanings not stated are excluded. *Colautti v. Franklin,* 439 U.S. 379, 392 n. 10, 99 S.Ct. 675, 684 n. 10, 58 L.Ed.2d 596 (1979). Third, clear evidence of legislative intent prevails over other principles of statutory construction. *National R.R. Passenger Corp. v. National Ass'n of R.R. Passengers,* 414 U.S. 453, 458, 94 S.Ct. 690, 693, 38 L.Ed.2d 646 (1974). Fourth, absent a

very clear legislative intent, the plain meaning will prevail. *Aaron v. SEC,* 446 U.S. 680, 697, 100 S.Ct. 1945, 1956, 64 L.Ed.2d 611 (1980). Last, "Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change." *Lorillard v. Pons,* 434 U.S. 575, 580, 98 S.Ct. 866, 870, 55 L.Ed.2d 40 (1978); *National Lead Co. v. United States,* 252 U.S. 140, 146–47, 40 S.Ct. 237, 239, 64 L.Ed. 496 (1920); *Farrell Lines, Inc. v. United States,* 499 F.2d 587, 605, 204 Ct.Cl. 482 (1974); *cf. Pierce v. Underwood,* 487 U.S. 552, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988).

*Johns–Manville Corp. v. United States,* 855 F.2d 1556, 1559 (Fed.Cir.1988), *cert. denied,* 489 U.S. 1066, 109 S.Ct. 1342, 103 L.Ed.2d 811 (1989). Thus, if a statute is plain and unequivocal on its face, there is no need to resort to the legislative history underlying the statute. *Reid v. Dep't of Commerce,* 793 F.2d 277, 281 (Fed.Cir.1986) (citing *United States v. Oregon,* 366 U.S. 643, 81 S.Ct. 1278, 6 L.Ed.2d 575 (1961), *reh'g denied,* 368 U.S. 870, 82 S.Ct. 24, 7 L.Ed.2d 70 (1961)). Furthermore, a court should resort to legislative history only if:

[A] literal interpretation would lead to an incongruous result. For example, if a literal reading of the statute would impute to Congress an irrational purpose, *United States v. Bryan,* 339 U.S. 323, 338, 70 S.Ct. 724, 734, 94 L.Ed. 884 (1950), or would thwart the obvious purposes of the statute, *Trans Alaska Pipeline Rate Cases,* 436 U.S. 631, 643, 98 S.Ct. 2053, 2061, 56 L.Ed.2d 591 (1978), or would lead to a result at variance with the policy of the legislation as a whole, *Trustee[s] of Indiana University v. United States,* 618 F.2d 736, 739, 223 Ct.Cl. 88, 94 (1980), then literal interpretation will be eschewed in favor of resort to the legislative history to ascertain the intent of Congress. *United States v. Oregon,* 366 U.S. at 648, 81 S.Ct. at 1281; 2A Sands § 46.07.

*Reid v. Department of Commerce,* 793 F.2d at 281–82.

Accepted principles of statutory construction also provide that courts must interpret a statute as a whole. *Massachusetts v. Morash*, 490 U.S. 107, 109 S.Ct. 1668, 104 L.Ed.2d 98 (1989). To this effect, the Supreme Court has written:

> On numerous occasions we have noted that " ' " '[i]n expounding a statute, we must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy.' " ' " *Kelly v. Robinson*, 479 U.S. 36, 43, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986), quoting *Offshore Logistics, Inc. v. Tallentire*, 477 U.S. 207, 221, 106 S.Ct. 2485, 91 L.Ed.2d 174 (1986) (quoting *Mastro Plastics Corp. v. NLRB*, 350 U.S. 270, 285, 76 S.Ct. 349, 100 L.Ed. 309 (1956) (in turn quoting *United States v. Heirs of Boisdore*, 8 How. 113, 122, 12 L.Ed. 1009 (1850))).

*Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 51, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987); *see* SUTHERLAND STATUTORY CONSTRUCTION § § 46.05, 46.06 (5th ed.1992). Courts must " 'give effect, if possible, to every clause and word of a statute,' " *United States v. Menasche*, 348 U.S. 528, 538–39, 75 S.Ct. 513, 99 L.Ed. 615 (1955) (quoting *Montclair Tp. v. Ramsdell*, 107 U.S. 147, 152, 2 S.Ct. 391, 27 L.Ed. 431 (1883)), for " '[t]he cardinal principle of statutory construction is to save and not to destroy.' " *Id.* (quoting *NLRB v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 30, 57 S.Ct. 615, 81 L.Ed. 893 (1937)). The meaning of statutory language depends on context and a statute should be read as a whole. *Bailey v. United States*, 516 U.S. 137, 145, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995); *King v. Saint Vincent's Hosp.*, 502 U.S. 215, 221, 112 S.Ct. 570, 116 L.Ed.2d 578 (1991) (citing *Shell Oil Co. v. Iowa Dept. of Revenue*, 488 U.S. 19, 26, 109 S.Ct. 278, 102 L.Ed.2d 186 (1988)). "Words are not pebbles in alien juxtaposition; they have only a communal existence; and not only does the meaning of each interpenetrate the other, but all in their aggregate take their purport from the setting in which they are used." *King v. Saint Vincent's Hosp.*, 502 U.S. at 221, 112 S.Ct. 570 (quoting *NLRB v. Federbush Co.*, 121 F.2d 954, 957 (2d Cir.1941) (L. Hand, J.)). Therefore, when reviewing a statute, this court must construe each section in connection with each of the other sections, so as to produce a harmonious whole.

Furthermore, in construing a statute, courts should attempt not to interpret a provision such that it renders other provisions of the same statute inconsistent, meaningless or superfluous. *Boise Cascade Corp. v. United States EPA*, 942 F.2d 1427, 1432 (9th Cir.1991). *See* SUTHERLAND STATUTORY CONSTRUCTION § 46.06 (5th ed.1992). "[W]here two statutes are 'capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective.' " *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1018, 104 S.Ct. 2862, 81 L.Ed.2d 815 (1984) (citing *Regional Rail Reorganization Act Cases*, 419 U.S. 102, 133–34, 95 S.Ct. 335, 42 L.Ed.2d 320 (1974) (quoting *Morton v. Mancari*, 417 U.S. 535, 551, 94 S.Ct. 2474, 41 L.Ed.2d 290 (1974))).

As discussed below, Congress enacted Section 702c of the Flood Control Act to address a flood control project on the Mississippi River and its tributaries, and also projects built subsequent to the enactment of the Flood Control Act. Thus, the San Luis Unit would fall under the protection of the Flood Control Act's liability limitation. The United States Court of Appeals for the Eighth Circuit stated in *National Manufacturing Company*:

> It is contended for the appellants that Section 3, which has been carried forward as Section 702c of the Code under a heading "Mississippi River," is not applicable to the Kansas River or its flood damage, but the point appears to be without merit. The words of the section, "floods or flood waters at any place," in the context of the Act and the succeeding flood control Acts to which the section is extended and which legislate concerning flood control projects throughout the entire country, specifically include the Kansas River and its floods and flood waters. The fact that the words Mississippi River "have lingered on in the successive editions of the United States Code is immaterial."

*National Mfg. Co. v. United States*, 210 F.2d 263, 274 (8th Cir.1954) (quoting *Stephan v.*

*United States,* 319 U.S. 423, 426, 63 S.Ct. 1135, 87 L.Ed. 1490 (1943); *Wong Yang Sung v. McGrath,* 339 U.S. 33, 51 n. 33, 70 S.Ct. 445, 94 L.Ed. 616 (1950)), *cert. denied,* 347 U.S. 967, 74 S.Ct. 778, 98 L.Ed. 1108 (1954).

Significantly, the plaintiff does not argue that the Flood Control Act is limited to Mississippi River flood control projects. Instead, the plaintiff argues that the Flood Control Act is a limitation of liability pertaining only to tort claims, and not to contract claims, such as the claim plaintiff has filed with this court. The plaintiff notes that, to its knowledge, the Flood Control Act has never been asserted in a contract action. Nor has the defendant or this court identified direct precedent to assist in resolving the current lawsuit.

Plaintiff argues that the Tucker Act of 1887, 28 U.S.C. § 1491 (1994), which waives sovereign immunity for contract actions, was not partially repealed by the Flood Control Act of 1928, and did not establish immunity from contracts to indemnify flood claims. According to the plaintiff, even if the Flood Control Act normally would constrain federal liability for flood claims, the plaintiff argues that the flood claims legislation must expressly or impliedly address the Tucker Act, or the flood claims limitation on liability fails and suits may be brought pursuant to freely entered into contracts.

Plaintiff's argument that the Flood Control Act did not expressly partially repeal the Tucker Act relies on *Ruckelshaus v. Monsanto Co.,* 467 U.S. 986, 104 S.Ct. 2862, 81 L.Ed.2d 815 (1984), for the proposition that even an implied partial repeal requires unambiguous evidence of intent to do so. In *Ruckelshaus,* the issue was whether the Tucker Act's jurisdiction over takings claims was partially repealed by a pesticide statute. *Id.* at 1017, 104 S.Ct. 2862. The Supreme Court determined that the pesticide statute did not partially repeal Tucker Act jurisdiction, and that a takings claim would lie in the United States Claims Court. The Court stated:

> In determining whether a Tucker Act remedy is available for claims arising out of a taking pursuant to a federal statute, the proper inquiry is ... "whether Congress has in the [statute] *withdrawn* the Tucker Act grant of jurisdiction to the Court of Clams to hear a suit involving the [statute] 'founded ... upon the Constitution.'"

*Id.* at 1017, 104 S.Ct. 2862 (quoting *Regional Rail Reorganization Act Cases,* 419 U.S. at 126, 95 S.Ct. 335 (emphasis in original)). This court possesses jurisdiction under the Tucker Act to adjudicate claims based upon a express contract. Unlike the present case, however, *Ruckelshaus* addressed a constitutionally derived right in a takings case, and not a contract case involving the issue of whether the government was authorized to enter into a contract for the indemnification of flood claims, as it did in the 1961 Contract and the 1972 Supplement.

In *United States v. James,* the Supreme Court upheld the limitation of liability provision of the Flood Control Act against flood claims brought as tort claims. *United States v. James,* 478 U.S. 597, 612, 106 S.Ct. 3116, 92 L.Ed.2d 483 (1986). In *James,* water skiers and a fisherman were injured or drowned in the reservoirs of federal flood control projects in Arkansas and Louisiana. Their claims were brought under the Federal Tort Claims Act. 28 U.S.C. § 2671–2680 (1982). The Supreme Court ruled, however, that liability could not lie against the government because the dams were part of federal flood control projects, and that Section 702c of the Flood Control Act barred such claims. *Id.* at 599–601, 612, 106 S.Ct. 3116. Because the Federal Tort Claims Act was not enacted until 1946, in 1928, when the Flood Control Act was enacted, sovereign immunity against tort actions had not yet been waived. Thus, flood claims brought as tort claims in 1928 would have been barred based on both sovereign immunity and the language of the Flood Control Act. In 1946, when sovereign immunity for tort actions was waived, and the Flood Control Act remained to bar flood claims, flood claims were brought in federal district courts under the Federal Tort Claims Act, 28 U.S.C. § 1346(b), but denied under the Flood Control Act. *United States v. James,* 478 U.S. at 600–01, 612, 106 S.Ct. 3116.

■ Although contract claims were not addressed by the Supreme Court in *James,* the opinion is of assistance to determine whether the Flood control Act similarly limits liability for flood claims brought as contract actions. The Supreme Court in *James* examined the plain words of the Flood Control Act ("No liability of any kind shall attach to or rest upon the United States for any damage from or by floods or flood waters at any place," 33 U.S.C. § 702c), and the legislative history of the Flood Control Act:

> Congress clearly sought to ensure beyond doubt that sovereign immunity would protect the Government from "any" liability associated with flood control. As the Court of Appeals for the Eighth Circuit explained [nearly five] decades ago in *National Mfg.[,* 210 F.2d 263*]*, § 702c's language "safeguarded the United States against liability of any kind for damage from or by floods or flood waters in the broadest and most emphatic language." 210 F.2d at 270. The equally broad and emphatic language found in the legislative history shows that Congress understood what it was saying. We therefore conclude that the legislative history fully supports attributing to the unambiguous words of the statute their ordinary meaning.

*United States v. James,* 478 U.S. at 608, 106 S.Ct. 3116. *See also id.* at 608–09, 106 S.Ct. 3116. The plain language of the Flood Control Act is very broad ("It is difficult to imagine broader language," *id.* at 604, 106 S.Ct. 3116), and not limited by express language to tort actions. Neither tort actions nor contract actions are expressly mentioned in the Flood Control Act limitation of liability language. Consonant with the broad language of the Flood Control Act, the legislative history of the Flood Control Act, recounted by the Supreme Court in *James,* reflected broad concern with liability for flood claims:

> Numerous statements concerning the immunity provision confirm that it was intended to reaffirm sovereign immunity in such a dangerous and extensive project. The Chairman of the House Rules Committee, in opening the discussion on the rule governing debate on the 1928 Act, stated:
>
> > I want this bill so drafted that it will contain all the safeguards necessary for the Federal Government. If we go down there and furnish protection to these people—and I assume it is a national responsibility—I do not want to have anything left out of the bill that would protect us now and for all time to come. I for one do not want to open up a situation that will cause thousands of lawsuits for damages against the Federal Government in the next 10, 20, or 50 years. We are entitled to have all of these provisions in the bill, and the American people will not forgive you if you fail to put them in when you have the opportunity. 69 Cong. Rec. 6641 (1928) (remarks of Rep. Snell).
>
> A number of other Congressmen unequivocally stated that the United States should not be liable for any expense other than the direct cost of constructing the project. *See id.,* at 7028 (remarks of Rep. Spearing); *id.* at 6999–7000 (remarks of Rep. Frear).
>
> These statements show that the sweeping language of § 702c was no drafting inadvertence.

*Id.* at 607–08, 106 S.Ct. 3116 (citing *National Mfg. Co. v. United States,* 210 F.2d at 270 (footnote omitted)). Therefore, the court concludes that under the Flood Control Act, no liability was intended to lie against the United States due to floods or flood waters so long as the action derives from a flood control project.

The San Luis Unit was designed from its inception as a flood control project.[1] *See*

---

1. Unlike the instant case, in *Peterson v. United States,* 367 F.2d 271, 276 (9th Cir.1966), the Air Force dynamited an ice jam up stream from the plaintiff's property, which resulted in flooding on the plaintiff's property. The United States Court of Appeals for the Ninth Circuit found that the federal government could be held liable for the actions of the Air Force because those actions did not involve any funds appropriated for flood control purposes. Also in *Graci v. United States,* 456 F.2d 20, 27 (5th Cir.1971), the United States Court of Appeals for the Fifth Circuit found that the federal government could be held liable for a

H.R. REP. NO. 86–399, at 4 (1959), *reprinted in* 1960 U.S.C.C.A.N. 2209, 2212–2213 ("The principal engineering features of the San Luis unit [are] the San Luis Dam and Reservoir ... flood works[,] and related facilities."); *San Luis Unit, Central Valley Project, California: Hearings on S. 44 Before the Subcomm. on Irrigation and Reclamation of the Senate Comm. on Interior and Insular Affairs,* 86th Cong. 17 (1959).

■ The San Luis Act states that, "[i]n constructing, operating, and maintaining the San Luis unit, the Secretary [of the Interior] shall be governed by the Federal reclamation laws...." San Luis Act § [1](a). Section 3(d) of the San Luis Act provides that "the United States and the State shall each pay annually an equitable share of the operation, maintenance, and replacement costs of the joint use facility." The San Luis Act does not contain language repealing the limitation of liability provision of the Flood Control Act. To the contrary, by affirmatively stating that federal reclamation laws are to be followed, the San Luis Act can be read to be consistent with the Flood Control Act. Moreover, liability for claims is not mentioned in the Act. The cost sharing in the Act is restricted to "operation, maintenance and replacement costs." While the Act did not mention claims made by third parties against either the United States or California, the 1961 Contract and 1972 Supplement did include provisions for such claims. Section 21 of the 1961 Contract states: "The United States and the State shall each pay annually an equitable share of the operation, maintenance, and replacement costs of the joint-use facilities, including claims paid by either party." Further, the 1972 Supplement provided that the state shall notify the United States of each accident or incident as a result of the operation of the joint or federal-only facilities. In the Supplement, the proportion of payments was set at 55 percent to be paid by the State of California and 45 percent to be paid by the United States.

Given the above discussion, at issue in the case before this court is whether, despite the contrary contractual agreement to share the cost of claims and the prior history of cost

sharing, the limitations imposed by the Flood Control Act makes such a contractual arrangement invalid, in violation of the statute, and beyond the authority of the government officials who entered into the contract. In *Federal Crop Insurance Corporation v. Merrill,* the Supreme Court stated that:

[A]nyone entering into an arrangement with the government takes the risk of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority. The scope of this authority may be explicitly defined by Congress or be limited by delegated legislation, properly exercised through the rule-making power. And this is so even though, as here, the [government] agent himself may have been unaware of the limitations upon his authority.

*Federal Crop Ins. Corp. v. Merrill,* 332 U.S. 380, 384, 68 S.Ct. 1, 92 L.Ed. 10 (1947). The court concludes that due to the limitation of liability on flood claims established in the Flood Control Act, the defendant was without authority to contract to indemnify the State for flood claim payments.

■ As a general rule, provisions included in a contract made in contravention of a statute are void and unenforceable. *See Connolly v. Union Sewer Pipe Co.,* 184 U.S. 540, 548, 22 S.Ct. 431, 46 L.Ed. 679 (1902). *See also Burck v. Taylor,* 152 U.S. 634, 648–49, 14 S.Ct. 696, 38 L.Ed. 578 (1894). The plaintiff's view of this case would allow the government to do by contract what it cannot do directly, without new legislation. "The principle to be extracted ... is, that the law will not lend its support to a claim founded upon its violation." *Coppell v. Hall,* 7 Wall. 542, 74 U.S. 542, 559, 19 L.Ed. 244 (1868) (citations omitted). The RESTATEMENT (SECOND) OF CONTRACTS § 178 (1981) states, "A promise or other term of an agreement is unenforceable on grounds of public policy if legislation provides that it is unenforceable ...." Under this rule, even if flood claims are part of the costs that California and the United States contracted to share, such a promise would be unenforceable on grounds of the contrary congressional public policy

claim because the project involved was a navigational project and not a flood control project.

position reflected in the Flood Control Act. *See In re Trans World Airlines, Inc.*, 145 F.3d 124, 135 (3d Cir.1998) ("Contracts that are void as against public policy are unenforceable regardless of how freely and willingly they were entered into.").

 Regardless of whether the 1961 Contract and the 1972 Supplement contemplated the sharing of the cost of flood claims, this court cannot enforce terms, whether freely negotiated or not, which are in violation of a congressionally enacted statute. Moreover, while the conduct of the parties may have reflected their understanding of the contract negotiations between the parties, an agency cannot ratify an arrangement which violates federal law. Parties cannot do by conduct, in this case payment of prior claims, what they may not do by express contract.[2]

Whether or not the protection of the liability limitation afforded to the United States by Section 702c of the Flood Control Act is appropriate public policy today or in a specific case is not a decision for this court to make.[3] The decision to rescind or retain any particular provision of the Flood Control Act is for Congress. Although the court may question the government's decision after twenty-five years to cease making payments to the State, and understands the State of California's negative reaction and reason for filing suit, under the applicable statutes and precedent, the defendant is not liable for the damages from flood or flood waters on which the plaintiff bases its claim.

## CONCLUSION

The United States is not liable for flood damage claims on or emanating from the San Luis Unit despite prior payments of such claims, apparently in contravention of statute. The Flood Control Act limits the federal government's liability over flood damage claims involving federal flood control projects. Any relief from the Flood Control Act must be sought in Congress, not in the courts. The defendant's motion for summary judgment, is, therefore, **GRANTED**, and the plaintiff's cross-motion for summary judgment is **DENIED**. The Clerk's Office shall enter judgment consistent with this opinion.

**IT IS SO ORDERED.**

---

2. Plaintiff argues that immunity from tort liability under the Federal Tort Claims Act does not necessarily preclude a contract action against the federal government, citing *Hatzlachh Supply Co. v. United States*, 444 U.S. 460, 464–65, 100 S.Ct. 647, 62 L.Ed.2d 614 (1980). This argument is based on the plaintiff's belief that the Flood Control Act's limitation of liability impacts only tort actions, a view considered and rejected above by the court. The Flood Control Act's limitation on liability for flood claims is broader than tort actions, and constrains contracts suits as well.

3. *See* notes criticizing the broad limitation of liability under 33 U.S.C. § 702c: Amy Hall, *The Immunity Provision of the Flood Control Act: Does It Have A Proper Role After the Demise of Sovereign Immunity?*, McGeorge L. Rev. 77 (1999); Mary Jean Pedersen, *Boudreau v. United States: Government Immunity Under the Flood Control Act of 1928 and the Effect of Outdated Legislation on Society*, 41 Vill. L. Rev. 1487 (1996).